IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
CIVIL CASE NO. 5:22-cv-00127-MR

| | |
|---|---|
| **ANTHONY HARRISON MOORE,** ) <br> ) <br> **Plaintiff,** ) <br> ) <br> vs. ) <br> ) <br> **CHRISTOPHER P. MURRAY, et al.,** ) <br> ) <br> **Defendants.** ) <br> _____ ) | **MEMORANDUM OF DECISION AND ORDER** |

**THIS MATTER** is before the Court on the Motion for Summary Judgment filed by Defendants Darren Daves, Dirriel Kale, Jr.,[1] and Christopher P. Murray [Doc. 38]. Also pending is the Plaintiff's Motion for the Appointment of Counsel [Doc. 43].

**I.   BACKGROUND**

The pro se Plaintiff Anthony Harrison Moore filed this action pursuant to 42 U.S.C. § 1983, addressing incidents that allegedly occurred while he was incarcerated at the Alexander Correctional Institution.[2] [See Doc. 1: Complaint]. The Plaintiff's unverified Complaint passed initial review against

---
[1] The Clerk will be instructed to update the Court's record with the correct spelling of Defendant Kale's first name.

[2] The Plaintiff presently resides at the Bertie Correctional Institution.

Defendants Daves, Kale, and Murray for claims of use of excessive force and failure to intervene. [Doc. 9: Order on Initial Review]. The Plaintiff seeks a declaratory judgment, injunctive relief, and compensatory damages. [Doc. 1: Complaint at 5].

The Defendants filed the instant Motion for Summary Judgment and supporting materials. [Doc. 38: MSJ]. Thereafter, the Court entered an Order in accordance with Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), advising the Plaintiff of the requirements for filing a response to the summary judgment motion and of the manner in which evidence could be submitted to the Court. [Doc. 42: Roseboro Order]. The Plaintiff filed a response as well as a motion for the appointment of counsel. [Doc. 44: Plaintiff's "Affidavit";[3] Doc. 43: Mo. for Counsel]. The Defendants filed a Notice informing the Court that they do not intend to reply. [Doc. 45: Notice]. The Motion for Summary Judgment is ripe for disposition.

## II. STANDARD OF REVIEW

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute is

---

[3] Although verified and titled an "Affidavit," this document contains only legal conclusions and conclusory contentions about what the video footage depicts.

2

genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is material only if it might affect the outcome of the suit under governing law. Id.

The movant has the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (internal citations omitted).

Once this initial burden is met, the burden shifts to the nonmoving party. The nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." Id. at 322 n.3. The nonmoving party may not rely upon mere allegations or denials of allegations in his pleadings to defeat a motion for summary judgment. Id. at 324. Rather, the nonmoving party must oppose a proper summary judgment motion with citation to "depositions, documents, electronically stored information, affidavits or declarations, stipulations …, admissions, interrogatory answers, or other materials" in the record. See id.; Fed. R. Civ. P. 56(c)(1)(a). Namely, the nonmoving party must present sufficient evidence from which "a reasonable

3

jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248. To that end, only evidence admissible at trial may be considered by the Court on summary judgment. Kennedy v. Joy Technologies, Inc., 269 F. App'x 302, 308 (4th Cir. 2008) (citation omitted).

When ruling on a summary judgment motion, a court must view the evidence and any inferences from the evidence in the light most favorable to the nonmoving party. Anderson, 477 U.S. at 255. Facts, however, "must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." Scott v. Harris, 550 U.S. 372, 380, 127 S.Ct. 1769, 1776 (2007). As the Supreme Court has emphasized,

> "[w]hen the moving party has carried its burden under Rule 56(c), the opponent must do more than simply show there is some metaphysical doubt as to the material facts …. Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita Elec. Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87, 106 S. Ct. 1348 (1986) (footnote omitted). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-28, 106 S. Ct. 2505 (1986). When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.

Scott, 550 U.S. at 380.

## III. FACTUAL BACKGROUND

The forecast of evidence viewed in the light most favorable to the Plaintiff shows the following.

Officer Kale was conducting rounds at the Alexander CI on the afternoon of August 2, 2021 when he observed that the Plaintiff's cell window was covered. [Doc. 40-5: Kale Affid. at ¶ 3]. When the Plaintiff did not respond to Officer Kale's commands to remove the covering, Kale radioed for assistance. [Id. at ¶¶ 3-4]. Unit Manager Daves, Sergeant Moretz,[4] and Officer Siciak[5] responded. [Id.]. Sergeant Moretz and Officer Kale peered through the food trap door and observed the Plaintiff lying on the cell floor in a puddle of vomit. [Id. at ¶ 5]. Officer Kale suspected that the Plaintiff might be under the influence of an intoxicating substance. [Id.].

Unit Manager Daves arrived and ordered that the Plaintiff's cell door be opened. [Id. at ¶ 6]. Someone radioed for a nurse to come medically assess the Plaintiff. [Id.]. After waiting outside the cell door for a nurse for a few minutes, Unit Manager Davis, Sergeant Moretz, and Officer Kale

---

[4] Sergeant Moretz is not a defendant in this case.

[5] Officer Siciak is not a defendant in this case.

5

entered the cell, followed a short time later by Nurse Margaret Allman[6] and Officer Siciak. [Id. at ¶ 7]. Nurse Allman checked the Plaintiff's vital signs and asked for the Plaintiff to be taken to main medical for evaluation. [Id. at ¶ 8]. Staff moved the Plaintiff to the doorway of his cell and attempted to place him in restraints so that he could be transported safely. [Id. at ¶ 9]. The Plaintiff repeatedly bent his knee and kicked at officers; he began struggling for approximately 30 seconds, and he resisted staff's efforts to stand him up and place him in a wheelchair. [Id.].

Captain Daves used his Conducted Electronic Weapon ("CEW") to administer a "drive stun" to the Plaintiff's back in order to gain his compliance and to stop his assaultive behavior, pursuant to policy. [Doc. 40-8: Daves Affid. at ¶¶ 11, 14]. Davis did not consider OC pepper spray to be a viable option due to the proximity of other staff members. [Id. at ¶ 11]. Daves' use of the CEW prompted the Plaintiff's compliance and allowed staff to transport him to medical without any further difficulty. [Id. at ¶ 16]. The only use of force during the incident was Captain Daves's single use of a CEW drive stun. [Id. at ¶ 17; Doc. 40-5: Kale Affid. at ¶ 14].

Unit Manager Murray was not on duty on August 2, 2021. [Doc. 40-6: Murray Affid. at ¶ 9; Doc. 40-2: MSJ Ex at 1-25 (Gate Log)]. He did not take

---

[6] Nurse Allman is not a defendant in this case.

part in, or witness, any of the events involving the Plaintiff that day. [Doc. 40-6: Murray Affid. at ¶ 10]. The Incident Report's reference to Murray using a CEW on the Plaintiff is erroneous. [Id. at ¶ 7].

The Defendants filed footage from a housing unit surveillance video camera that shows the following events:[7]

| | |
|---|---|
| 3:15:29 | An officer walks to a cell with its window covered, knocks repeatedly, and appears to speak into his radio. |
| 3:16:17 | A second officer arrives at the cell. |
| 3:16:20 | The first officer opens the trap and both officers peer inside. |
| 3:16:43 | The cell door is opened. |
| 3:18:59 | Several officers enter the cell. |
| 3:22:36 | A nurse enters the cell with medical equipment. |
| 3:26:09 | The nurse exits the cell. |
| 3:26:23 | An officer pushes a wheelchair to the open cell door. |
| 3:26:59 | The Plaintiff is pulled into the cell doorway on his stomach, with his hands behind his back. |
| 3:27:15 | The Plaintiff begins kicking. |
| 3:27:25 | The Plaintiff continues jerking his body and kicking. |
| 3:28:40 | The Plaintiff is lifted into the wheelchair and escorted away. |

---

[7] The camera depicts the dayroom. The Plaintiff's cell doorway is visible, however, the view is partially obstructed by a stairway and officers.

7

## IV. DISCUSSION

The Eighth Amendment[8] prohibits the infliction of "cruel and unusual punishments," U.S. CONST. amend. VIII, and protects prisoners from the "unnecessary and wanton infliction of pain," Whitley v. Albers, 475 U.S. 312, 319 (1986). To establish an Eighth Amendment claim, an inmate must satisfy both an objective component – that the harm inflicted was sufficiently serious – and a subjective component – that the prison official acted with a sufficiently culpable state of mind. Williams v. Benjamin, 77 F.3d 756, 761 (4th Cir. 1996).

This subjective standard requires proof of malicious or sadistic action by a prison official in order to make out an excessive force claim. This is because prison "[o]fficials are entitled to use appropriate force to quell prison disturbances." Williams, 77 F.3d at 761. "Because officials must act 'in haste, under pressure, and frequently without the luxury of a second chance,' deliberate indifference is not a sufficiently rigorous standard." Id. (citing Whitley, 475 U.S. at 320). "[I]n making and carryout decisions involving the use of force to restore order, prison officials undoubtedly must take into account the very real threats the unrest presents to inmates and prison

---

[8] The Complaint refers to the Fourteenth Amendment; however, it is the Eighth Amendment that applies to excessive force claims by convicted prisoners. [See Doc. 9: Order on Initial Review at 2, n.1].

8

officials alike, in addition to the possible harms to inmates against whom force might be used." Whitley, 475 U.S. at 320. "[I]n these circumstances, in order to make out an Eighth Amendment claim, a prisoner must demonstrate that officials applied force maliciously and sadistically for the very purpose of causing harm." Williams, 77 F.3d at 761 (internal quotations and citation omitted).

Moreover, "[c]orrectional officers do not have to be under physical attack to justify the use of force; they can also use appropriate force 'to preserve internal order by compelling compliance with prison rules and procedures.'" Shiheed v. Harding, 802 Fed. App'x 765, 767 (4th Cir. 2020) (quoting Brooks v. Johnson, 924 F.3d 104, 112 (4th Cir. 2019)). "'And we owe officers wide-ranging deference in their determinations that force is required to induce compliance with policies important to institutional security.'" Id. (quoting Brooks, 924 F.3d at 112).

The Fourth Circuit recognizes a cause of action for bystander liability "premised on a law officer's duty to uphold the law and protect the public from illegal acts, regardless of who commits them." Stevenson v. City of Seat Pleasant, Md., 743 F.3d 411, 416-17 (4th Cir. 2014) (quoting Randall v. Prince George's Cnty., 302 F.3d 188, 203 (4th Cir. 2002)). A "bystander officer" can be liable for his or her nonfeasance if he or she: "(1) knows that

9

a fellow officer is violating an individual's constitutional rights; (2) has a reasonable opportunity to prevent the harm; and (3) chooses not to act." Randall, 302 F.3d at 204.

The Plaintiff alleges that he was tazed in the back while he was lying facedown, handcuffed, and making no aggressive movements. [Doc. 1-1: Compl. Attachment at 3]. However, he has not forecast any evidence to support this claim. First, as to Defendant Murray, the undisputed forecast of evidence demonstrates that Defendant Murray was not working on August 2, 2021, and he had no involvement in the incidents at issue. As to Defendant Daves, the forecast of evidence, including video footage, shows that the Plaintiff began kicking and thrashing when officers attempted to restrain him, that this continued for at least 30 seconds, and that Defendant Daves administered a single drive stun with his CEW to stop the Plaintiff's resistive and assaultive behavior. See Scott, 550 U.S. at 380. As for Defendant Kale, Plaintiff has presented no forecast that Kale employed a CWE on Plaintiff at all. The Plaintiff has not forecast evidence that Defendants Daves or Kale or anyone else applied force maliciously and sadistically for the very purpose of causing harm, or that any Defendant failed to intervene in the violation of his rights. Accordingly, there is no genuine dispute of material fact as to any Defendant's use of excessive force or

failure to intervene, and the Defendants' Motion for Summary Judgment will be granted.

"Qualified immunity protects officers who commit constitutional violations but who, in light of clearly established law, could reasonably believe that their actions were lawful." Henry v. Purnell, 652 F.3d 524, 531 (4th Cir. 2011) (en banc). "To determine whether an officer is entitled to qualified immunity, the court must examine (1) whether the plaintiff has demonstrated that the officer violated a constitutional right and (2) whether that right was clearly established at the time of the alleged violation." E.W. ex rel. T.W. v. Dolgos, 884 F.3d 172, 178 (4th Cir. 2018) (internal quotation marks omitted). The doctrine of qualified immunity "gives government officials breathing room to make reasonable but mistaken judgments and protects all but the plainly incompetent or those who knowingly violate the law." Smith v. Ray, 781 F.3d 95, 100 (4th Cir. 2015) (internal quotation marks omitted). Here, because Plaintiff has not presented a forecast of evidence that the Defendants violated a constitutional right, they are entitled to qualified immunity on this ground as well.

In the Motion for the Appointment of Counsel [Doc. 43], the Plaintiff claims that he cannot afford counsel; that his imprisonment will limit his ability to litigate this case; that the issues are complex and will require research and

investigation; that his access to law library and his knowledge of the law are limited; that a trial will involve conflicting testimony, the introduction of evidence, and cross-examination that are better handled by counsel; and that he has been unable to obtain legal assistance.

There is no absolute right to the appointment of counsel in civil actions such as this one. Therefore, a plaintiff must present "exceptional circumstances" in order to require the Court to seek the assistance of a private attorney for a plaintiff who is unable to afford counsel. Miller v. Simmons, 814 F.2d 962, 966 (4th Cir. 1987). The Plaintiff has failed to demonstrate the existence of exceptional circumstances that would warrant the appointment of counsel, and his Motion is denied.

## IV. CONCLUSION

For the reasons stated herein, the Court grants Defendants' Motion for Summary Judgment, and this action is dismissed with prejudice. The Plaintiff's Motion for the Appointment of Counsel is denied.

### ORDER

**IT IS, THEREFORE, ORDERED** that:

1. The Defendants' Motion for Summary Judgment [Doc. 38] is **GRANTED**, and this action is **DISMISSED WITH PREJUDICE**.

2. The Plaintiff's Motion for the Appointment of Counsel [Doc. 43] is **DENIED**.

3. The Clerk is respectfully instructed to update the Court's records to reflect that Defendant Kale's first name is spelled "Dirriel" rather than Dirnel.

**IT IS SO ORDERED.**

Signed: May 15, 2024

Martin Reidinger
Chief United States District Judge

13

Case 5:22-cv-00127-MR   Document 47   Filed 05/15/24   Page 13 of 13